236 So.2d 470 (1970)
Frank John CIEBOTER, Appellant,
v.
Stephen C. O'CONNELL, As President of the University of Florida, Appellee.
No. M-337.
District Court of Appeal of Florida, First District.
June 16, 1970.
Rehearing Denied July 7, 1970.
*471 Richard J. Wilson and Margaret Kathleen Wright, Gainesville, for appellant.
Rivers Buford, Jr., and Stephen Marc Slepin, Tallahassee, for appellee.
WIGGINTON, Judge.
Appellant seeks review of a final judgment denying his petition by which he seeks an alternative writ of mandamus directed to appellee and requiring the performance of certain specified acts in connection with appellant's candidacy for a Doctor of Philosophy degree in Education at the University of Florida.
Appellant was duly admitted as a candidate for a doctor's degree in Education on May 7, 1963. After his admission petitioner sought and obtained employment as a teacher at Palm Beach Junior College where he worked during the years 1963, 1964, and the early part of 1965. While employed in this capacity he engaged in study and research on his approved dissertation topic but resigned his employment on February 21, 1965, rather than submit to an investigation concerning charges of misconduct lodged against him. Although information concerning the charges which resulted in his resignation reached his supervisory committee at the University of Florida, the chairman of the committee and the chairman of the department in which petitioner was pursuing his degree both stated to appellant that the charges had not been substantiated and that the matter would be dropped. He thereupon continued working on his dissertation which he completed and submitted to the chairman of his supervisory committee in January, 1967.
Appellant's dissertation was neither read nor considered by his supervisory committee, nor were any further steps taken to administer to appellant his final examination preliminary to awarding the degree he pursued. After requests for action by appellant, a special committee was appointed by the University for the purpose of conferring with appellant and determining what additional work, if any, would have to be performed by him to meet degree requirements. Appellant met with this committee and submitted to questions concerning, among other things, the cause for his *472 resignation as a member of the instructional staff of the junior college in which he was previously employed. After the conference appellant was advised in writing that in order for him to continue pursuing his degree, it would be necessary for him to participate in a program of personal counseling for a minimum of one calendar year involving weekly sessions with an approved counselor with a doctorate degree in counseling, clinical psychology or psychiatry for the purpose of assisting appellant in increasing his "openness". After the successful completion of this program, appellant would thereafter be required to devote a minimum of three quarters of study as a full-time resident student at the University participating in supervised practicum in counseling, and then retake the special area examination which he had previously passed.
Appellant does not charge the University officials with a gross or manifest abuse of discretion, nor with arbitrary or capricious acts constituting bad faith. He does insist, however, that the only reason why they refused to consider his written dissertation and administer to him the final examination preliminary to issuance of the degree he seeks in accordance with normal procedure, is because they have concluded at this late date that he was guilty of misconduct while occupying the position of a teacher on the instructional staff of the junior college. It is appellant's position that before the University may lawfully find him guilty of any alleged acts of misconduct, due process first requires that written charges be preferred against him setting forth the misconduct of which he is accused, and that he be afforded an opportunity to be heard on such charges. Appellant bases his position on the decision of this court in Woody v. Burns[1] in which this court held:
"It has been held that constitutional due process requires notice and opportunity for hearing before a student at a tax-supported college or university can be expelled for misconduct. * * * However the principles of fair play require that before a student may be denied the right to continue his studies at a state-supported university due to misconduct he shall be advised of all the charges against him and be given an opportunity to refute same. * * * "
The allegations of the petition for writ of mandamus filed by appellant, together with the exhibits attached thereto, do not support appellant's contention that he is being penalized because of unproven acts of misconduct charged against him several years previously. Although appellant's act in resigning his position on the instructional staff of the junior college rather than submit to an investigation of the acts of misconduct charged against him might have been a factor considered by the University officials, it was only one of what was represented to be a number of other factors relating to his interpersonal relationships which caused the University to conclude that appellant had not demonstrated satisfactory development in this significant aspect of his education.
The record establishes that appellant's major is in the field of personnel services. As appears from one of appellant's exhibits consisting of a letter from University President O'Connell to appellant's counsel, one of the crucial characteristics of a student's program for obtaining a professional degree is that he must demonstrate skill in interpersonal relationships formally through practicum and internship and informally in all of his relationships with fellow students and faculty. This exhibit explains that for one to counsel another, for one to fulfill the responsibility of helping another with his personal problems, the one as a practicing professional counselor must first know himself and be in control of his own problems.
It is the position of the University as reflected by the exhibits forming a part of *473 appellant's petition that because of the deficiency in appellant's educational development, it is necessary that he participate in weekly sessions of personal counseling and thereafter complete three additional quarters of study as a resident student at the University before a final appraisal of his overall qualifications to receive a graduate degree in Education may be made. These are determinations which fall peculiarly within the competence of the University officials charged with the responsibility of granting doctorate degrees only to students whom they find to be fully qualified in all respects and for whose competence the University must vouch.
What appears to be the settled law governing this situation is that set forth in Connelly v. University of Vermont and State Agricultural College[2] as follows:
"This rule has been stated in a variety of ways by a number of courts. It has been said that courts do not interfere with the management of a school's internal affairs unless `there has been a manifest abuse of discretion or where [the school officials'] action has been arbitrary or unlawful,' * * * or unless the school authorities have acted `arbitrarily or capriciously', * * * or unless they have abused their discretion, * * * or acted in `bad faith', * * *.
"The effect of these decisions is to give the school authorities absolute discretion in determining whether a student has been delinquent in his studies, and to place the burden on the student of showing that his dismissal was motivated by arbitrariness, capriciousness or bad faith. The reason for this rule is that in matters of scholarship, the school authorities are uniquely qualified by training and experience to judge the qualifications of a student, and efficiency of instruction depends in no small degree upon the school faculty's freedom from interference from other noneducational tribunals. It is only when the school authorities abuse this discretion that a court may interfere with their decision to dismiss a student."
Since the writ of mandamus sought by appellant seeks to coerce appellee to perform acts falling wholly within the ambit of his official discretion, it must be held that the writ has been improvidently sought and the trial court was correct as a matter of law in denying the petition.[3] The order appealed is therefore affirmed.
JOHNSON, C.J., and SPECTOR, J., concur.
NOTES
[1] Woody v. Burns (Fla.App. 1966), 188 So.2d 56, 58.
[2] Connelly v. University of Vermont and State Agricultural College (U.S.D.C.Vt. 1965), 244 F. Supp. 156, 159, 160.
[3] 21 Fla.Jur. 336, Mandamus, § 31.